Filed 7/31/13  P. v. Maestas CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE, | B246631 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA071591) |
| v. | |
| JOE GILBERT MAESTAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila Corral Lyons, Judge.  Affirmed.

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

———————————

Defendant and appellant, Joe Gilbert Maestas, appeals from the judgment entered following his plea of no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and his admission he previously had been convicted of burglary (Pen. Code, § 459) within the meaning of the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The trial court sentenced Maestas to four years in state prison. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[1]

Foothill narcotics officer Wilcer Godoy has been a police officer for eight and a half years. He has spent four and a half of those years "working narcotics" and has received extensive training in the recognition and use of methamphetamine.

At approximately 5:00 p.m. on September 29, 2011, Godoy and his partner were on patrol on Telfair Avenue in Los Angeles County. As Godoy passed by a house on the corner of Telfair and Kamloops, he saw Maestas leave through the rear door, get on a bicycle and ride off. Police officers had previously obtained a search warrant for the residence and Godoy decided to detain Maestas and execute the warrant. Approximately five minutes later and three blocks from the house, Maestas was stopped by police officers, detained and searched. He was then transported to the Foothill police station and placed in a holding cell until approximately 11:00 p.m., when he was booked for possession of methamphetamine. According to Maestas, at no time during that afternoon or evening was he advised of his *Miranda*[2] rights.

In the meantime, several people at the residence were detained and Godoy asked each of them "where each and every one of them reside[d]." After Maestas's mother, father and brother indicated Maestas slept in an upstairs bedroom which no one else had access to, Godoy and his partner, Officer Llamas, entered the room to search it. When he

---

[1]     The facts have been taken from the transcript of the preliminary hearing, the probation report and the transcript of Maestas's motion to suppress evidence.

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

entered the room, Officer Llamas saw in "plain sight" on top of Maestas's bed a "clear plastic baggie containing a crystal-like substance resembling methamphetamine." As the officers continued to search the room, they found male clothing and photographs of Maestas with a little girl and other family members.

Godoy booked the baggie of a substance resembling methamphetamine into evidence and submitted it to the laboratory for analysis. The lab report indicated the baggie contained 1.08 net grams of a substance containing methamphetamine. It was Godoy's opinion 1.08 grams was a usable amount of the drug.

2. *Procedural history.*

Following a preliminary hearing, on November 23, 2011, an information was filed charging Maestas with possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), a felony. It was further alleged Maestas previously had suffered a conviction for the serious or violent felony of burglary (Pen. Code, § 459) within the meaning of the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and had served terms in prison for six offenses pursuant to Penal Code section 667.5. Finally, it was alleged Maestas's previous burglary conviction amounted to a serious or violent felony pursuant to Penal Code section 1170, subdivision (h)(3).

At proceedings held on November 30, 2011, Maestas indicated he wished to represent himself. Although the trial court advised Maestas "self-representation is almost always an unwise choice [and would] not work to his advantage," that he would not be helped "or treated with special leniency by the court or the prosecutor, and that he [would] be held to the same standards of conduct as an attorney," Maestas nevertheless decided he wished to proceed in propria persona. After the trial court determined Maestas "voluntarily and intelligently [chose] self-representation, and . . . knowingly, intelligently, understandingly, and explicitly waive[d] his right to counsel," the court concluded Maestas was "competent to represent himself" and granted his motion for self-representation.

After granting Maestas a number of continuances, appointing for him a private investigator and allocating funds for his use in his defense, the trial court set the next

hearing date for February 2, 2012. Maestas was then granted further continuances. However, on March 16, 2012, the trial court indicated a pre-trial conference and Maestas's motion to suppress evidence pursuant to Penal Code section 1538.5 would be heard at proceedings to be held on April 19, 2012.

On April 2, 2012, Maestas filed a handwritten motion to suppress evidence. Maestas argued the warrant relied on by Godoy to search the house included only occupants " 'on the property' " at the time. As Maestas was riding his bicycle several blocks from the house, the warrant did not apply to him and he was unlawfully searched and taken into custody. Moreover, the individuals at the house at the time of the search, Maestas's mother, father and brother, were never shown a copy of the warrant. Finally, Maestas asserted there were no witnesses who saw the officers find the methamphetamine "in an open room (access[i]ble to anyone)." This fact made the " 'find' suspicious."

In a response filed April 12, 2012, the People asserted all the items Maestas sought to have suppressed had been obtained from inside his bedroom pursuant to a search warrant issued on September 26, 2011. As Maestas has not challenged the warrant, "he ha[d] provided no legal basis for the motion . . . ."

At proceedings held on April 19, 2012, the trial court, after giving Maestas some time to read the People's response, heard Maestas's motion made pursuant to Penal Code section 1538.5. During the hearing, Maestas again indicated he was not at the house during the search and, moreover, had "no expectation of privacy in the home because [he and] the owner ha[d] . . . an agreement . . . ." Maestas had an "open-door policy" with regard to his room.

The People responded, under the circumstances he had presented, Maestas had no standing to challenge the search as he was "disavowing any privacy interest or any interest in the home where the [methamphetamine] was found." Based on his lack of standing and the validity of the warrant, there was no basis on which the trial court could grant Maestas's motion to suppress evidence.

4

The trial court denied Maestas's motion "based on the grounds stated in the People's opposition," specifically that it could be presumed the search warrant was valid and Maestas lacked standing to attack it.

After the trial court indicated it was denying his motion to suppress evidence, Maestas indicated he was ready for trial but "need[ed] some witnesses pulled in." The trial court agreed to appoint for him a legal runner to serve subpoenas, then continued the proceedings to May 10, 2012.

On May 10, 2012, an amended information was filed alleging in count 3 that, on or about September 29, 2011, Maestas unlawfully possessed methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), a felony. It was noted that, " '[c]onviction of this offense [would] require [Maestas] to register pursuant to Health and Safety Code section 11590' " and " '[f]ailure to do so [would be] a crime pursuant to Health and Safety Code section 11594.' " It was further alleged Maestas previously had suffered a conviction for a serious or violent felony, burglary (Pen. Code, § 459), within the meaning of the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and had suffered six prior felony convictions for which he served prison terms pursuant to the provisions of Penal Code section 667.5, subdivision (b). Finally, it was alleged as to count 3 "that an executed sentence for a felony pursuant to this subdivision [must] be served in state prison pursuant to Penal Code section 1170[, subdivision] (h)(3) in that . . . Maestas" had previously suffered a conviction for burglary, a serious or violent felony within the meaning of Penal Code sections 1192.7 and 667.5, subdivision (c).

At a hearing held on May 10, 2012, Maestas's request to "surrender pro-per status [was] granted" and "the office of the deputy public defender [was] appointed as counsel" for him.

On June 26, 2012, count 1 of the information was dismissed in furtherance of justice pursuant to Penal Code section 1385. Maestas then entered a plea of not guilty to the allegation in count 3, that he had violated Health and Safety Code section 11377, subdivision (a), and denied all the additional allegations.

5

After the trial court granted defense counsel several continuances, on August 31, 2012, counsel filed a motion requesting the court to dismiss in furtherance of justice (Pen. Code, § 1385) Maestas's 1987 conviction of burglary (Pen. Code, § 459) alleged pursuant to the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Counsel argued Maestas's present offense was neither "violent" nor "life-threatening" and the alleged burglary was approximately 25 years old and committed when Maestas was only 20 years old. In addition counsel asserted, since the prior burglary, Maestas "ha[d] not sustained any more convictions for violent or serious offenses. Instead, his record reflect[ed] parole violations, theft and drug possession and [a conviction for] possession for [the] sale [of] marijuana. [Counsel further argued] [t]heft related offenses are indicative of drug addiction." Finally, counsel asserted Maestas's most recent conviction for "Child Molestation/Annoyance" in violation of Penal Code section 646.6, subdivision (a) was a misdemeanor "and was inter-family as the victim [was] his daughter." Counsel added it was "noteworthy" that on the appropriate test, "[Maestas] scored a 1, which [indicates] a low range of risk." In conclusion, Maestas's counsel argued "[Maestas was] outside the spirit of the three strikes law given the age of his strike prior, the fact . . . the strike prior is his only violent or serious conviction and [it is] indicat[ed] . . . he has struggled with drug addiction for years."

On September 7, 2012, the People filed opposition to defense counsel's motion in which they emphasized Maestas's lengthy criminal history. They asserted, in addition to the burglary conviction alleged as a strike, Maestas had been convicted of seven misdemeanors, the most recent of which occurred in October 2011 and was for "molesting or annoying a child in violation of Penal Code section 647.6." Further, in the 25 years since his strike prior, Maestas had spent 20 years and four months in state prison and two years and 90 days in county jail. He had been returned to state prison seven times for parole violations. Based on this record, it could not be said Maestas fell outside the spirit of the Three Strikes sentencing scheme.

At a hearing held on September 11, 2012, the trial court denied Maestas's motion to strike his prior burglary conviction based on the factors stated in the People's

6

opposition. The trial court stated, "I think in this case the defendant is not outside the spirit of the Three Strikes law." The trial court then continued the matter to October 10, 2012.

On October 10, 2012, the trial court indicated a disposition had been reached in Maestas's case. Maestas was to plead no contest to count 3, a violation of Health and Safety Code section 11377, subdivision (a), and admit the prior burglary conviction alleged pursuant to the Three Strikes law. He was to be sentenced to the midterm of two years in prison for the drug offense which, as a result of the strike, would then be doubled to four years. After waiving his right to a trial, his right to confront and cross-examine the witnesses against him, his right to remain silent and his right to present a defense, Maestas pleaded no contest to "possession of a controlled substance, methamphetamine, in violation of Health [and] Safety Code [section] 11377[, subdivision] (a), a felony." Maestas then admitted previously having been convicted of burglary in violation of Penal Code section 459, "a strike pursuant to Penal Code section[s] 1170.12[, subdivisions] (a) through (d) and 667[, subdivisions] (b) through (i)."

The trial court sentenced Maestas to the midterm of two years in state prison for his conviction of possession of methamphetamine and an additional two years pursuant to the Three Strikes law, for a total term of four years in state prison. The court awarded Maestas presentence custody credits for 376 days actually served and 376 days of good time/work time, for a total of 752 days. The trial court then ordered Maestas to pay a $240 restitution fine (Pen. Code, § 1202.4, subd. (b)), a stayed $240 parole revocation restitution fine (Pen. Code, § 1202.45), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $40 court security fee (Pen. Code, § 1465.8, subd. (a)(1)).

On December 5, 2012, Maestas filed a timely notice of appeal. He indicated his appeal was based on the trial court's denial of his Penal Code section 1538.5 motion to suppress evidence, ineffective assistance of counsel and the propriety of the fines and penalties imposed.

7

**CONTENTIONS**

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record.

By notice filed April 30, 2013, the clerk of this court advised Maestas to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. No response has been received to date.

**REVIEW ON APPEAL**

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.